UNITED STATES v. SAMUEL BAROTZ & CO.

No. 6277..—Invoice dated Nassau, Bahamas, B. W. I., February 1943.
Certified February 1943.
Entered at New York, N. Y., March 2, 1943.
Entry No. 720537.

Second Division, Appellate Term

(Decided May 16, 1946)

*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellant.
*Siegel & Mandell* (*Sidney Mandell* of counsel) for the appellee.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

TILSON, Judge: This is an application for a review of the decision of the trial court, reported as Reap. Dec. 6128, dated April 10, 1945, in which it was found that the entered values, plus 5½ per centum for packing, represented the proper dutiable export values of certain strands of sea shells imported from Nassau, Bahamas, in February 1943.

Only two items of merchandise are involved; one being described on the invoice as "30 inch Strands Tipped Pointer Shells," which was invoiced and entered at 4 shillings per dozen, and was appraised at $1.20 per dozen, net packed; and the other being described on the invoice as "30 inch Strands—White Pointers," which was invoiced and entered at 3 shillings per dozen, and was appraised at $0.96 per

dozen, net packed. In making his appraisement the appraiser failed to indicate the basis of the values found by him. The invoice also shows a purchasing commission of 7½ per centum, amounting to £22–2–6, freight charges of £9–2–9, and consular charges of £0–12–4, which said charges, on entry, were deducted as being nondutiable.

Counsel for the plaintiff in the court below offered and there were received in evidence as collective exhibit 1, six affidavits from persons residing in the Bahamas. While these affidavits are not all couched in the same language, the following is quoted as being typical of the collective exhibit:

I, Jane Bullard of the Eastern District in the Island of New Providence make Oath and say:—

1. That I have been stringing shell strands of all kinds of shells including the white Pointer shells for about Ten (10) years.

2. That I have for over Five (5) years been selling to Mr. Milo Boughton Butler a merchant and Commissionaire of the City of Nassau in the Island of New Providence large quantities of strands of the white pointer shells, each strand Thirty (30) Inches long.

3. That I have been selling the white pointer shell strands and other shell strands for the past Ten (10) years; and that up to the time I made arrangements with Mr. Butler to sell to him the white pointer shell strands, I had sold the white pointer shell strands at the rate of Two shillings and Sixpence (2/6) per dozen.

4. That about Five (5) years ago Mr. Butler agreed to purchase the white pointer shell strands from me at the rate of Three shillings (3/–) per dozen and that I have been selling them to him ever since.

5. That I understand that Mr. Butler purchases these large quantities of white pointer shell strands for the purpose of shipping them to the United States of America.

6. That I am still selling large quantities of these white pointer shell strands to Mr. Butler at the rate of Three shillings (3/–) per dozen.

There were also offered and admitted in evidence in the court below as exhibits 2 and 3 a strand of white pointer shells and a strand consisting of both tipped beads and white beads. There were also offered and received in evidence as collective exhibit 5, in the court below nine affidavits made by residents of the Bahamas, the following being typical of this exhibit:

I, Alice Hall being duly sworn, deposes and says:

That I am personally familiar with the transaction of sales of pointer shells strung by me to Samuel Barotz & Co. of New York City, United States of America, and that I am engaged in the business of manufacturing necklaces, strung beads and other shell articles in the usual wholesale quantities in Nassau, British West Indies, sales for export to foreign countries including United States.

I further swear that the prices appearing on the invoices of Samuel Barotz & Co., which is imbursed in the invoices of the Commission-Agent, M. V. Roberts, represents a true market value of this item.

That we were prepared and willing to sell in the usual wholesale quantities and in the ordinary course of trade, said beads at the same price at which they were sold to Samuel Barotz & Co.

That these goods were freely offered at the same prices to all purchasers who desired to export the merchandise to the United States.

That the usual wholesale quantities consist of a dozen strings; that the price of these strings for the wholesale market value of such strings for home consumption is not higher than the prices that were sold for export to the United States.

That we have no claim to manufacture or sell exclusively for Samuel Barotz & Co., of New York City; that there is no understanding or agreement with Samuel Barotz & Co., or the agents of Samuel Barotz & Co. directly or indirectly.

That Mrs. M. V. Roberts acts in this transaction as the purchasing agent for Samuel Barotz & Co. of New York.

That we did not in any way receive fees, compensations or other considerations, that we did not receive advances, deposits or funds prior to the delivery of the merchandise to the Commission-Agent.

The record shows that there is no foreign value for this or similar merchandise. The evidence offered by counsel for the plaintiff below was directed to showing an export value, and counsel for appellant, in his argument before this court, stated:

Incidentally, I don't think there is any question of basis of value. I think they both agree it is export value.

The testimony of Samuel Barotz, a partner in appellee's firm, is to the effect that he arranged for the purchase of the instant merchandise through a commissionaire, Mrs. M. V. Roberts, who was paid a commission of 7½ per centum for her services, and that he also did business with another commissionaire on the same terms.

Witness Roberts testified that she acted as a commissionaire for Samuel Barotz & Co. in the purchase of the instant merchandise; that her commission was 7½ per centum; that the white pointers were freely offered to her at 3 shillings per dozen and the tipped pointers at 4 shillings per dozen; that "Such offers were made not only by the manufacturers or sellers who produced the goods that are embraced in the invoice before this court but by many others."

Witness Butler testified that he was a merchant and commissionaire in Nassau dealing in this class of merchandise; that he purchased the white pointers during the period here involved at 3 shillings per dozen, and that during this period there were hundreds of manufacturers in Nassau who offered to sell the plain goods in all this period at 3 shillings per dozen strings, and the tipped goods at 4 shillings per dozen strings, and that the price did not vary according to the quantity purchased.

Witness Abramovitz testified for the defendant that he visited Nassau in 1942 for the purpose of purchasing these white pointers and tipped pointers, and that he actually purchased the white pointers and the tipped pointers, paying 8 cents per strand for the former and 10 cents per strand for the latter. He stated, however, that he was in Nassau and made these purchases "About November of 1942," and while the record shows that the market for this class of merchandise was steady during 1943, it also shows that the price at which this class

of merchandise was freely offered for sale, and sold in 1942, was higher than in 1943. This being true, the testimony of witness Abramovitz is of little assistance to us in finding the proper dutiable values for this merchandise.

Witness Estreich testified for the defendant in the court below that he was the examiner who examined this importation of strands of shells and other similar strands of shells; that between October 1942 and February 3, 1943, he examined some 10 or 15 shipments of similar merchandise, and in each case the merchandise was invoiced and entered at prices higher than the invoiced and entered prices of the instant merchandise. None of the invoices and entries in these other cases was produced or offered in evidence. However, there is no evidence in this record to show that the merchandise covered by these 10 or 15 shipments made by other importers between October 1942 and February 3, 1943, was not finally appraised at the values contended for by the appellee herein.

Furthermore, this witness testified that "I can only base my statements from reports that are in the files of the Government." Apparently the report referred to was the report of Harry M. Walsh, customs agent, which is in evidence herein as exhibit 7. Exhibit 7 recites what purports to be sales of certain white pointers at $0.08 each, some at $0.085 each, and one at $0.96 per dozen, and white pointers tipped at $1.32. This exhibit also shows other quotations or sales of tipped shell strands at 4 shillings per dozen and white pointers at 3 shillings per dozen. There is nothing, however, to show that any of these sales were consummated as a result of free offers to all purchasers in the ordinary course of trade, nor is there any evidence to show that the merchandise covered by any of such sales was such as or similar to the instant merchandise. In this connection, witness Barotz testified that "* * * they told me they are using, that their merchandise is going through a better process than the one which Mrs. Roberts and Mr. Butler is collecting from the home workers. * * * they claim their merchandise is better." The customs agent also reports that:

Mr. Underwood mentioned that the worker's product must be watched carefully or the dealer may find himself purchasing a considerable percentage of short or poorly made strands, which do not come up to standard.

The record contains ample evidence to support the finding of the trial court that the cost of packing amounted to 5½ per centum, and that this amount should be included as a part of the dutiable value of the merchandise.

After a careful examination of the record we find as fact:

1. That the merchandise involved in this application consists of 30-inch strands of white pointers and tipped pointers, imported from Nassau, Bahamas, B. W. I., on February 3, 1943.

2. That Nassau is one of the principal markets for the sale of such or similar merchandise in the country of exportation.

3. That the price does not vary according to the quantity purchased.

4. That there is no foreign value for such or similar merchandise, and that the proper basis for appraisement is the export value.

5. That the price at which such and similar merchandise is freely offered for sale in the ordinary course of trade in the principal market of Nassau is for the 30-inch strands of tipped pointer shells, 4 shillings per dozen, plus packing of 5½ per centum, and for the 30-inch strands of white pointer shells, 3 shillings per dozen, plus packing of 5½ per centum.

We, therefore, conclude as matter of law that the judgment of the trial court should be, and the same is hereby, affirmed. Judgment will be rendered accordingly.